AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

United States of America

v.

RUSSELL COOPER,

Defendant.

Case No. 2:21-mj-02750-DUTY

LODGED
CLERK, U.S. DISTRICT COURT
6/4/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: _____JB_____ DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date(s) of November 1, 2020, in Los Angeles County, in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1), (b)(1)(A) | Possession with Intent to Distribute a Controlled Substance |

This criminal complaint is based on these facts:

  *Please see attached affidavit.*

  ☒ Continued on the attached sheet.

/S/ Kevin Knipp
Complainant's signature

Kevin Knipp, HSI Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: June 4, 2021

Judge's signature

City and state: Los Angeles, California

Hon. Gail Standish, U.S. Magistrate Judge
Printed name and title

**AFFIDAVIT**

I, Kevin M. Knipp, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant against Russell Cooper ("COOPER") for a violation of 21 U.S.C. § 841(a)(1): Distribution of a Controlled Substance.

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant, and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF AFFIANT

3. I am a special agent with Homeland Security Investigations ("HSI") and have been so employed since May 2018. As a special agent with HSI, I am authorized to investigate crimes involving violations of federal law. I am currently assigned to the HSI Los Angeles International Airport office Border Enforcement Security Taskforce, where I am assigned to investigate violations of immigration and customs laws including large-scale drug trafficking.

4.  I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.  While there, I completed courses that cover criminal investigative functions, criminal law, immigration law, and customs law, as well as additional training specifically related to the investigation of international narcotics trafficking and related offenses, such as the unlawful importation, transportation, and distribution of controlled substances.  During the course of my employment with HSI, I have received several hundred hours of comprehensive, formal instruction on topics such as drug identification, money laundering techniques, patterns of drug trafficking, complex conspiracies, the exploitation of drug traffickers' telecommunications devices, surveillance, and other investigative techniques.  I have led and assisted in investigations into the unlawful importation, exportation, manufacture, possession with intent to distribute, and distribution of drugs and other controlled substances, and conspiracies involving drugs and controlled substance offenses.

5.  Prior to HSI, I was a United States Customs and Border Protection ("CBP") Officer from 2008 to 2016, and a CBP Supervisor from 2016 to 2018.  There, I enforced immigration and customs laws, conducted numerous seizures, collected evidence, and worked with criminal investigators from various agencies.  As a CBP Supervisor, I oversaw the Los Angeles International Airport Contraband Enforcement Team whose primary mission was to interdict international trafficking of controlled substances.

### III. SUMMARY OF PROBABLE CAUSE

6.  HSI and the Redondo Beach Police Department ("RBPD") are investigating individuals involved in the distribution of fentanyl in the Redondo Beach area, including distribution resulting in overdose deaths. COOPER has been arrested several times with fentanyl and other drugs and is believed to be a fentanyl dealer in the South Bay area. In November 2020, COOPER was found with approximately 93 grams of methamphetamine and 475 grams of a substance containing fentanyl in his car. Since then, he has again been arrested with drugs, including fentanyl, in December 2020, January 2021, March 2021, and April 2021.

### IV. STATEMENT OF PROBABLE CAUSE

7.  Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

**A.  Background**

8.  On July 16, 2020, the Honorable Steve Kim issued a federal arrest warrant in 2:20-MJ-03331, authorizing the arrest of Sergio PETRONI. In addition, the Honorable Steve Kim issued federal search warrants in 2:20-MJ-03333, 2:20-MJ-03334, and 2:20-MJ-03336, authorizing searches of the premises at Room 123 of the DoubleTree By Hilton Hotel, San Pedro, 2800 Via Cabrillo Marina, San Pedro, California, 90731; a black 2019 Jeep Grand Cherokee bearing temporary California license plate AL69T08 and vehicle identification number 1C4RJFDJ7KC594498; and the person of PETRONI, respectively.

9. On July 16, 2020, HSI and RBPD executed the federal arrest and search warrants.

10. During the search of Room 123 at the DoubleTree, investigators discovered approximately three pounds of methamphetamine, two pounds of fentanyl, approximately $65,000 in U.S. currency, and various other bags of controlled substances, including heroin, ketamine, and cocaine. Law enforcement also found a cellphone belonging to PETRONI.

11. During the search of the phone, I noticed a text conversation between PETRONI and phone number 424-203-9600, which had been saved in PETRONI's phone as "Rusty Coopster." The text conversation, which was from July 12, 2020, through July 15, 2020, revealed the following:

   a. On July 12, 2020, at approximately 2:45 p.m., PETRONI wrote to "Rusty Coopster" "Send me your address." At approximately 2:46 p.m., "Rusty Coopster" responded "902 Camino Real."

   b. At approximately 10:17 p.m., "Rusty Coopster" messaged PETRONI "Come meet me," and "I want to talk business."

   c. On July 15, 2020, "Rusty Coopster" sent additional text messages to PETRONI: "Yo I'm getting them at 750 picked up six Anf flipped them I want to grab 6 more and Ill grab you half a pound." At 11:05 a.m., "Rusty Coopster" messaged PETRONI "I am trying to get one of the kilos so me and you can split it."

d. Based on my training and experience and my knowledge of this investigation, I believe "Rusty Coopster" and PETRONI were discussing future drug transactions.

**B. RBPD Arrests COOPER on November 1, 2020**

12. On November 1, 2020, at approximately 2:30 a.m., RPBD pulled over a 1999 Mercedes Benz E Class Sedan bearing California license plate number 8RBM649 ("the Mercedes"), registered to COOPER at 902 Camino Real #108, Redondo Beach, California, 90277, for driving through a stop sign. The driver and sole occupant of the Mercedes was identified as COOPER, and a records check revealed that COOPER's license was suspended.

13. Officers conducted a DUI investigation, which COOPER passed. COOPER was cited for driving with a suspended license and a stop sign violation.

14. While the officer approached the Mercedes to hand COOPER the citation, the officer looked in the front driver's window and saw a butane torch lighter between the driver's seat and the center console. Next to the torch was a black leather pouch, which was open. Inside the pouch, the officer saw a small yellow plastic bag with several white crystalline rocks, which the officer recognized as methamphetamine.

15. Based on the officer's observation of the suspected methamphetamine, officers conducted a search of the Mercedes.

16. During the search, officers found various baggies of suspected drugs. The substances were later tested by the Drug Enforcement Administration lab and confirmed to be 93 grams of

actual methamphetamine and 475 grams of a substance containing fentanyl. Officers also found empty plastic bags and a scale.

17. COOPER was arrested and booked by RBPD and the Mercedes was towed. COOPER was not interviewed following his arrest.

18. COOPER was later released from custody. State charges were filed, and the case is pending.

    **C.    Anaheim Police Department Arrests COOPER on December 26, 2020**

19. On December 26, 2020, Anaheim Police Department Officers were flagged down by a concerned citizen, who advised officers that an individual, later identified as COOPER, appeared to be passed out behind the wheel of the Mercedes with the engine running while parked at a gas station.

20. Officers roused COOPER, identified themselves, and asked if they could search the Mercedes. COOPER, who was the only occupant of the car, gave his consent for officers to search the Mercedes. During the search, officers discovered approximately 25 grams of fentanyl inside a black container and $9,220 in various denominations. COOPER was subsequently arrested and booked by Anaheim Police Department.

21. Following his arrest, officers read COOPER his Miranda rights, and he agreed to speak with the officers. During the interview, COOPER stated the following:

    a.    When asked what the substance was inside the black container, COOPER stated the substance was "very dangerous for you to hold." COOPER further stated the substance was

fentanyl, and he knew it was fentanyl because he is a habitual fentanyl user. COOPER was asked how much fentanyl he uses, to which he responded, "a lot."

      b.    COOPER said he has been addicted to fentanyl for approximately three years and has been in and out of drug rehab during that time.

      c.    COOPER stated that he is highly addicted to fentanyl and that he takes enough fentanyl to keep him "numb." When asked how much fentanyl COOPER uses per dose, COOPER said he uses approximately 1-3 grams per day, at roughly 0.3 grams per dose.

      d.    When asked where he acquired the fentanyl, COOPER stated that it came from his friend. COOPER explained that he had been with his friend inside the Mercedes, and that his friend must have left the container of fentanyl in the car.

      e.    COOPER said that he purchased the fentanyl for $800 from his friend.

      f.    COOPER stated that he spends approximately $120 per gram on fentanyl and spends approximately $225 daily to support his addiction. Additionally, COOPER said that he "makes sure not to run out," and that he buys his drugs in bulk, which is cheaper.

      g.    When asked about the large sum of currency found in the Mercedes, COOPER said that he had just been paid for a job he completed, and that he forgot to put the money in the bank. When asked how much he was paid for the job, COOPER said $2,700.

22. Following the interview, COOPER was booked and transported to the Orange County Jail.

23. COOPER was later released from custody. State charges were filed, and the case is pending.

**D.     RBPD Again Arrests COOPER on January 7, 2021**

24. On January 7, 2021, RBPD stopped the Mercedes for reckless driving. COOPER was identified as the driver and sole occupant of the car.

25. During the traffic stop, officers approached the open driver's door of the Mercedes and saw the following:

   a.   A blue piece of a straw on the driver's side floorboard, inside of which officers subsequently discovered a white powdery residue.

   b.   A white powdery substance on the driver's seat.

   c.   A glass pipe with a bulbous end on the front seat. The pipe was coated in a charred white crystalline residue, which officers believed to be methamphetamine. Officers conducted a field test of the residue in the pipe, which returned positive for methamphetamine.

   d.   A black cell phone.

26. In light of these observations, officers conducted a search of the Mercedes.

27. During the search, officers further found approximately $1,063 in various denominations located in the center console.

28. Additionally, officers found a balance sheet detailing cash transactions, reflecting statements related to narcotics

8

tracking such as "fronted another 4 ½ oz., sold 2 oz., 2500-1600 for fetty, remainder of debt not included in new batch."

    a.  Based on my training and experience, "fetty" is street slang for fentanyl, and "batch" refers to a bulk order of drugs.

29. Officers read COOPER his Miranda rights, and COOPER agreed to speak with the officers. COOPER said that the glass pipe was his and that he smokes methamphetamine. COOPER also said that the powdery residue on the driver's seat was cocaine, and he admitted that he uses other drugs, including fentanyl.

30. COOPER was transported to the Redondo Beach jail for booking and DUI evaluation. COOPER was then transported to the Torrance Memorial hospital for a blood draw. At the hospital, COOPER told officers that the white powdery substance found on the driver's seat of the Mercedes was in fact fentanyl, not cocaine.

31. COOPER was transported back to the jail and officers asked COOPER if he recalled his Miranda rights. COOPER responded that he did.

32. Officers showed COOPER the balance sheet found in the Mercedes. COOPER said that he had no idea what the note was about or how it got in his car.

33. When officers advised COOPER that the balance sheet was found with the money located in the center console, COOPER admitted that the sheet was his, but he said it was a few months old. COOPER further stated that he did not write the sheet.

34. COOPER was arrested and booked by RBPD.

35. The Mercedes was towed incident to the arrest.

36. COOPER was later released from custody and charges are pending decision from the Redondo Beach city prosecutor.

**E.   RBPD Arrests COOPER for a Third Time on March 17, 2021**

37. On March 17, 2021, RBPD uniformed patrol responded to an illegally parked vehicle on 185th street in Redondo Beach.

38. Upon arrival, officers noticed the Mercedes parked outside on 185th Street. Officers conducted a records check on the Mercedes and learned that it was registered to COOPER and had expired registration. Additionally, officers were made aware of a $60,000 bench warrant for COOPER out of Los Angeles County.

39. Officers then observed an individual get inside of the car and drive away. Officers conducted a traffic stop on the Mercedes.

40. Officers approached the car, and COOPER identified himself as the driver and sole occupant of the car. COOPER was arrested for the outstanding warrant. Officers conducted a search incident to arrest and found no drugs or paraphernalia on his person. COOPER gave officers consent to search the Mercedes.

41. While conducting a search of the car, a total of approximately $3,480 was found in COOPER's wallet, a tin box, and a notebook. In addition, a chunk of white powdery substance was found in a plastic wrap, hidden inside of the center console of the Mercedes. Officers tested the white powdery substance,

10

which positively identified the substance as fentanyl. The total weight of the fentanyl was approximately 8.12 grams.

42. Following the search of the car, COOPER was transported to the RBPD jail.

43. COOPER was later released from custody and no charges were filed.

**F.    RBPD Arrests COOPER for a Fourth Time on April 1, 2021**

44. On April 1, 2021, COOPER left a voicemail with the RBPD inquiring about the return of some seized items from a previous arrest.

45. In the voicemail, COOPER provided identifying information as well as contact information in the form of phone number: 424-408-7610.

46. At approximately 11:39 a.m. an RBPD detective acting in an undercover capacity sent a text message to COOPER stating, "Yo, you got any black or feni?"

47. Based on my training, experience, and knowledge of the investigation, I know "black" is common street vernacular for heroin, and "feni" is common street vernacular for fentanyl.

48. At approximately 11:40 a.m., the undercover detective received a phone call from COOPER. The phone call lasted approximately 10 seconds, without any conversation.

49. After COOPER hung up, the undercover detective sent COOPER a text message stating "Call me back."

50. At approximately 11:41 a.m., COOPER called the undercover detective, in which there was a pre-recorded message

11

which stated, "You will be receiving a call from 'Russell,' to accept, press 1." The undercover detective accepted the call.

51. During the phone call, which was not recorded but took place in the presence of a second RBPD detective, COOPER stated the following:

    a. COOPER identified himself as "Rusty" and "Fonzi" several times.

    b. COOPER stated he is the best "feni dealer" in the South Bay.

    c. COOPER stated he was currently in the city of Lomita finishing up another narcotic transaction, and he could bring the undercover detective "good fucking feni" for $400.

    d. COOPER stated he would drive down and meet the undercover detective at the Redondo Pier Inn, Room 208, located at 206 S. Pacific Coast Hwy, Redondo Beach, California, 90277, in less than an hour.

    e. COOPER stated he would contact the undercover detective upon his arrival.

52. At approximately 12:48 p.m. the undercover detective texted COOPER stating "Wya." Based on my experience, "wya" is common street vernacular for "where you at."

53. At approximately 12:49 p.m., COOPER replied via text stating "I'm pulling up."

54. At approximately 12:53 p.m. the Mercedes parked on the south side of Garnet Street, just east of Pacific Coast Highway and directly adjacent to the Redondo Pier Inn hotel.

55. RBPD officers and detectives observed and identified the driver of the Mercedes to be COOPER.

56. RBPD officers in a marked vehicle responded to the location and detained COOPER.

57. While COOPER was detained, COOPER spontaneously said that he had drugs in the Mercedes, and to be careful because there was fentanyl in the Mercedes.

58. During a search of the car, RBPD detectives discovered a clear plastic baggie containing approximately 5.16 grams of a white powdery substance resembling fentanyl, a clear plastic zip lock baggie containing approximately 1.52 grams of a white powdery substance resembling fentanyl and approximately $1800 USD.

59. Following the search of the car, the suspected narcotics and the U.S. currency were transported to the RBPD evidence storage vault.

60. COOPER was arrested, transported, and booked for possession and transportation of a controlled substance with the intent to sell.

61. While COOPER was transported to the jail, officers advised COOPER of his Miranda rights, and COOPER agreed to speak to law enforcement.

62. COOPER stated he is a habitual user of fentanyl.

63. COOPER stated the substances discovered in his car constituted the last of his fentanyl supply.

64. COOPER stated he intended to sell $400 of fentanyl at the Redondo Pier Inn Hotel.

65. COOPER was later released from custody, and no charges were filed.

### G. Interview of COOPER

66. On April 28, 2021, COOPER was arrested by RBPD for an active bench warrant relating to a pending DUI charge.

67. Following the arrest, COOPER was interviewed by investigators with HSI and RBPD.

68. Prior to the interview, investigators read COOPER his Miranda rights, and COOPER agreed to speak with investigators.

69. During the interview, COOPER admitted to selling fentanyl in the past, but stated that he was not currently selling and was instead only using fentanyl.

70. COOPER admitted to having purchased in the past as much as $12,000 of fentanyl at one time. COOPER stated he purchased the fentanyl from an individual in San Diego.

71. COOPER admitted that the fentanyl purchased from San Diego was the same fentanyl that was found in his Mercedes during his November 1, 2020, arrest.

72. Following the interview, COOPER was booked by RBPD on the outstanding warrant.

//
//
//
//
//
//
//

## V. CONCLUSION

73. For the reasons described above, there is probable cause to believe that COOPER has committed a violation of 21 U.S.C. §§ 841(a)(1): Distribution of a Controlled Substance.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this  4   day of
June, 2021.

_____
HONORABLE GAIL STANDISH
UNITED STATES MAGISTRATE JUDGE